

ORDER

United States v. Jose Sanchez-Palomino, CR S. 09-0094-MCE

Permission to obtain the requested records by subpoena pursuant to Fed. R. Crim. P. 17 (c) is hereby GRANTED, this ___28th___ day of ___May___, 2010. This document shall be returned to defendant's counsel.

IT IS SO ORDERED.

Hon. Morrison C. England
United States District Judge

**OFFICE OF THE FEDERAL DEFENDER**
**EASTERN DISTRICT OF CALIFORNIA**
**801 I STREET, 3rd FLOOR**
**SACRAMENTO, CALIFORNIA 95814**
*Daniel J. Broderick*                    (916) 498-5700  Fax: (916) 498-5710                    *Linda C. Harter*
*Federal Defender*                                                                           *Chief Assistant Defender*

# MEMORANDUM

DATE:       May 27, 2010

TO:         Hon. Morrison C. England Jr.
            United States District Judge

CC:         Todd Leras, AUSA

FROM:       Lauren Cusick
            Assistant Federal Defender

SUBJECT:    United States v. Jose Sanchez-Palomino, CR S 09-0094-MCE
            Request for Authorization to Issue Subpoena Duces Tecum Pursuant to F.R.Crim. P.
            17(c)

        Permission is hereby requested for the issuance of a subpoena duces tecum for records
from the Shasta County Sheriff's Department. Defense counsel has filed a motion to suppress
evidence and a motion to dismiss in this case. Those motions are set for a non-evidentiary
hearing on August 5, 2010. Defense counsel has provided a copy of this request to the
prosecutor.

        This case arises out of an investigation by the North State Initiative California Multi-
Jurisdictional Methamphetamine Enforcement Task Force (NSI Cal-MMET). Evidence indicates
that this agency, and the officers who stopped Mr. Sanchez-Palomino in this case (Deputies
Kropholler and McQuillan of the Shasta County Sheriff's Office) have a pattern and practice of
illegally stopping Hispanic drivers on I-5 in Shasta County. Mr. Sanchez-Palomino was stopped
as part of this pattern. The motion to dismiss alleges that this stop, arrest, and prosecution were
illegally pursued on the basis of ethnic and racial origin and must be dismissed under the Equal
Protection Clause.

        The Northern State Initiative of Cal MMET (NSI Cal MMET) is a collaborative effort
which encompasses five counties: Shasta, Tehama, Glenn, Butte, and Colusa and operates out of
the Shasta County Sheriff's Office (SCSO). NSI Cal MMET's primary goal is to disrupt and
dismantle clandestine labs and organizations that manufacture and distribute methamphetamine.
NSI Cal MMET includes asset forfeiture as a significant source of income. In 2008, NSI Cal
MMET budgeted for $205,232.00 in asset forfeiture; at the end of the fiscal year the actual figure
was $377,969.13. NSI Cal MMET has estimated that there will be approximately $393,604.00 in
asset forfeiture this year.

There are 6 federal cases, involving 11 defendants, that arise out of the same pattern and practice by the Shasta County Sheriff's Office deputies. Further, there are 12 state cases in Shasta county also involving the same pattern and practice. Additional cases continue to be filed.

The defense has previously obtained documents – through investigation, sharing with other defense counsel, and by subpoena return in other federal and state cases involving the same officers – that indicates that the three officers have engaged in an ongoing pattern of stopping Hispanic drivers on I-5 in Shasta county.

Further, the defense has engaged in surveillance of the officers on five days over a month-long period in February and March of this year which discloses an ongoing practice of stopping Hispanic drivers on I-5. Importantly, this surveillance documents 21 stops, 17 of which involved Hispanics. Only one vehicle stop involved a Caucasian driver. Sixteen of the stops were followed by full searches, and in some case even luggage was searched, but none resulted in the discovery of contraband. The Federal Defender's Office is contacting the drivers and passengers in those vehicles to document what occurred during these stops.

Finally, a statistical assessment of the stops by these three officers indicates the following: Approximately 77 investigation reports were obtained by the Shasta County Public Defender's Office and provided to the Federal Defender's Office beginning after May 2007 and continuing through February 2010. These investigation reports do not include traffic tickets or warning citations, those are items being sought by this subpoena. All of the NSI Cal-MMET reports were generated as a result of traffic stops. Of those reports, approximately 57 involved Hispanic drivers, 8 involved Black drivers, 10 involved White drivers, and 3 were "others." Accordingly, NSI Cal-MMET has arrested 73% Hispanics as a result of these stops.

Accordingly, the percentage of the drug related arrests made on Interstate 5 by the Cal MMET agents were abnormally high in regard to Hispanics. In January 2009, the Shasta County Public Defender's Office started compiling information on all Cal MMET arrests made on Interstate 5 during 2008. It monitored the arrests in 2009 and continues to monitor the arrests in 2010.

Census records disclose the following: Hispanics constitute 36.6% of California's population. Hispanics constitute 8% of Shasta County's population. Hispanics constitute 9.8 % of Washington State's population. Hispanics constitute 11% of Oregon's population. Clearly a traffic stop rate of more than 73% Hispanic documents a huge racial disparity in stopping drivers.

Of those 77 investigation reports, 15 of those detained were driving vehicles with Oregon license plates; 27 of those detained were driving vehicles with Washington State license plates. The above numbers only reflect cases in which reports were filed, either for arrest purposes or drug related asset forfeiture purposes. They do not include traffic citations, traffic warning citations, or verbal warnings.

2

However, through investigation and observation the SCPDO is aware that the NSI Cal MMET/DHE team has made numerous traffic stops on I-5 during the above-mentioned time frame. It is extremely difficult to obtain information on those who were stopped and not arrested/detained due to the transient nature of traffic on I-5. It appears many of those who were stopped were not cited for CVC violations but simply issued a Cal MMET "warning citation." This warning citation is not an approved California form. Rather, it appears to be used internally by Cal-MMET to keep track of stops that do not result in seizures. Therefore the only entity that is controlling that flow of information is NSI Cal MMET/DHE. Those warning citations would lead to relevant information that would help answer the questions presented in this matter in that they contain data regarding the race of the driver, reason for the stop, and contact information for those persons who were stopped and searched but not arrested.

The documents requested in the attached subpoena duces tecum will provide information to support the defense's contention that the officers are engaged in a racially-discriminatory practice of traffic stops. The documents will establish the motivation for the stop of the car in this case, provide impeachment material on the officers, and establish the pattern of stops the officers were engaged in. Impeachment materials are relevant to the officers' credibility, as they claim to have stopped Mr. Sanchez-Palomino for an entirely subjective reason. Information about the drug detection dog's training and activities is relevant to the suppression motion pending. Officer Kropholler has already testified under oath that he keeps records on the performance of the canine detection dog. Demographic data and reports by a CAL-MMET consultant will show the traits for which the officers were trained to look, as well as the basis for those profiles. Data provided by Shasta County to that consultant, who was hired to "show[] the information and inteeligence collected, and the relationships, both geographical and demographically, of DTO's [Drug Trafficking Organizations], people, and places related to drug trafficking investigations," will fill in the blanks on the resulting demographic profile generated by the consultant. Moreover, any changes in policy and training by Cal-MMET and the Sheriff's Office in response to such demographic analysis would be relevant to the officer's actions in this case. SHASCOM logs have previously been received but are filled with codes for which we need a manual or training guide.

Defense counsel will subpoena the records for return to the Court. The Shasta County Sheriff's Office has already received and responded to a subpoena issued in this case by co-defendant's private counsel. The County of Shasta returned the documents to the Court, which provided them to the United States Attorney's Office for review. The U.S. Attorney's Office found that the documents were responsive and relevant, and they were ultimately disclosed to the defense. Prior to disclosure, the County of Shasta sought a protective order to prevent defense counsel in that case from sharing the documents with other counsel in other cases. Your Honor denied the protective order. After reviewing the disclosed records, defense counsel in that case seeks additional documents by subpoena. To the extent that records are obtained which are pertinent to the case, counsel acknowledges that they are subject to reciprocal discovery requirements should they be used at trial, and agrees that prompt disclosure to the government will be made in compliance with the law.

3

Rule 17(c) of the Federal Rules of Criminal Procedure authorizes issuance of subpoenas *duces tecum* to third parties, requiring pretrial production of documents pertaining to the defense. The party requesting such a subpoena must demonstrate that the material sought is relevant and admissible and has been identified with specificity. See, e.g., United States v. Nixon, 418 U.S. 683, 699-700 (1974); United States v. Eden, 659 F.2d 1376, 1381 (9th Cir. 1981). Eden further requires that the proponent demonstrate that the materials are not available from any other source and that their examination should not await trial. Eden, 659 F.2d at 1381. All of the information sought is relevant to the motions to suppress and to dismiss. They are not available from any other source.

For the above reasons it is submitted that the information sought is relevant to issues to be faced in this case and that pre-trial disclosure will promote justice. Defense counsel believes that the documentation sought will disclose the practices engaged in by the three officers on the date of Mr. Sanchez-Palominos's stop, as well as provide evidentiary support showing an ongoing practice of discrimination in law enforcement. Therefore it is requested that the request be granted and that the court sign the below proposed order. A copy of the proposed subpoena is attached.

//
//

4